Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-5101
Telephone: (516) 268-7080
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

1:20-cv-09730

Jaclynn Brown, individually and on behalf
of all others similarly situated,

                              Plaintiff,

              - against -

Kerry Inc.,

                              Defendant

Class Action Complaint

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Kerry Inc. ("defendant") manufactures, distributes, markets, labels and sells spiced black tea concentrate purporting to be low in sugar ("Slightly Sweet") – under its Oregon Chai brand ("Product").

2.    The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of 32 OZ (946 ML).

3.    Chai is a type of tea brewed with milk, sweetened with sugar or honey and containing a mixture of aromatic herbs and spices.[1]

4.    The relevant front label statements include "Slightly Sweet," "A Less Sweet Twist on Our Authentic Chai" and "Black Tea Concentrate, Honey & Spices – Just Add Milk."

---

[1] Teatulia, What is Chai?; Masala Chai, Wikipedia.



5.   Consumer survey evidence shows that "slightly sweet" claims such as that used by Defendant is misleading and deceptive.

6.   According to a consumer survey performed by Innova Market Insights, "sugar reduction was considered a popular option for the three in five US consumers who would rather

cut back on sugar than consume artificial sweeteners."[2]

7.      However, "confusion about how to read product labels and general distrust of their accuracy means many Americans are at a loss as to how to reduce sugar," according to a Healthline survey.[3]

8.      These findings were confirmed through research published in 2017, which examined claims that a food or beverage was "low" in a particular nutrient.[4]

9.      According to one of the study's authors:

A low-/no-nutrient claim means different things for different foods. This could potentially lead to confusion if consumers focus on seeking out products with specific nutrient claims or use a claim to justify the purchase of less-healthy foods. In fact, these results suggest (but are not conclusive) that in some cases, products that tend to be high in calories, sodium, sugar, or fat actually may be more likely to have low-/no-content claims.

10.     The representation as "Slightly Sweet" is understood by consumers to indicate the Product is "low sugar" and causes them to think it has less sugar than it does.

11.     Low sugar products are generally marketed towards consumers seeking products that are useful in weight control, through consumption of fewer calories.

12.     Reasonable consumers "clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content."   N. J. Patterson et al., "*Consumer understanding of sugars claims on food and drink products.*" Nutrition bulletin 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories.").

---

[2] Sam Mehmet, 60% of US consumers would rather reduce sugar than consume sweeteners, says survey, New Food Magazine, November 12, 2019.
[3] Elizabeth Crawford, Consumers seek 'low-sugar' claims, but remain confused & distrustful of nutrition labeling, Food Navigator-Usa.com, November 29, 2016.
[4] Lindsey Smith Taillie, et al. "No fat, no sugar, no salt... no problem? Prevalence of "low-content" nutrient claims and their associations with the nutritional profile of food and beverage purchases in the United States." *Journal of the Academy of Nutrition and Dietetics* 117.9 (2017): 1366-1374.

13.   As "maintaining a healthy body weight became more scientifically supported and accepted as public health and individual goals, it was no longer accurate that they be described in connection with "special dietary uses."  56 Fed. Reg. 229, 60421 at 60457 ("Consequently, the agency is proposing to place requirements for terms such as "low" and "reduced calorie," comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60").

14.   In fact, 21 C.F.R. § 105.66 originally included "terms such as low calorie, 'reduced calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight."  56 Fed. Reg. 229, 60421 at 60457, Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms (Nov. 7, 1991) (21 CFR Parts 5, 101, and 105); FDA, Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims, Sept. 2007 ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

15.   In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[5]

16.   The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[6]

17.   There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of

---

[5] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[6] Id.

certain cancers' relationship to obesity."[7]

18.    In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[8]

19.    At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

20.    In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[9]

21.    As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in   the  coming  year.    .     ."[10]

22.    Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[11]

23.    The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85%

---

[7] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[8] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[9] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[10] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[11] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018

are doing so for health reasons and 58% for weight concerns."[12]

24.    The Product's most prominent claim, "Slightly Sweet," is an unlawful nutrient content claim that makes an "absolute" or "low" claim about the amount of sugar it contains.

25.    Nutrient content claims were established by the FDA as a requirement of Sec. 3(b)(1)(A)(iii) of the Nutrition Labeling and Education Act of 1990 ("NLEA").[13]

26.    21 C.F.R. § 101.13 ("general principles") provides a framework for types of nutrient content claims that are allowed.  21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

27.    The terms or descriptors used, along with the relevant language, may seem highly technical, but were the outcome of dozens of consumer meetings held by the FDA across the country.

28.    The comments of consumers at such meetings generally expressed confusion as to the many descriptors used on food labels which did not match the actual nutrient content of such foods.

29.    The FDA established nutrient content claims for sugar to prevent consumers being deceived by a product when the absence (or minimal amount) of sugars does not indicate "a product which is low in calories or significantly reduced in calories."  21 C.F.R. § 101.60(c)(1).

30.    These regulations set the boundaries of when "[A] claim about the calorie or sugar content of a food may [only] be made on the label."  21 C.F.R. § 101.60(a).

31.    Specifically, claims for the absence of ("no…"), and relative ("fewer calories," "less sugar") amounts, of calories and sugar, are authorized with restrictions, but a straight "low sugar" claim is not allowed. 21 C.F.R. § 101.60(c).

---

[12] *Id.*
[13] Public Law 101-535, 104 Stat 2353; 21 U.S.C. § 343(r)(2)(A).

32.     Here, Defendant's Product contain more 0.5 grams of sugar, which means the statement of "Slightly Sweet" violates 21 C.F.R. 101.60(c), which states:

> Sugar content claims - (1) Use of terms such as…"trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar."

> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless…. The food contains less than 0.5 g of sugars.

33.     To the extent that Defendant claims "Slightly Sweet" is a low sugar claim, that too is not allowed.

34.     Because "low sugar" claims have never been authorized, they are prohibited.  58 Fed. Reg. 2302, 2368 ("The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.").

35.     The FDA has issued warning letters to companies making "low sugar" claims:

> The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…")

>  FDA Warning Letter to CK Management, Inc., May 19, 2015.

36.     A January 9, 2020 letter to the Food and Drug Administration by consumer-advocacy group Center for the Science in the Public Interest ("CSPI"), criticized products which made implied "low sugar" claims:

The terms… "slightly"…. [implies] that a low (*i.e.* small) amount of sugars are present…The Merriam-Webster Dictionary defines the word "slight" to mean "small … in amount…"[14] These words [slightly] are all synonymous with the word "low,", which is defined as "small in number or amount." Therefore, the products bearing claims of…"slightly sweet" [bears] [an] unauthorized implied "low sugar" claim[s] and are misbranded under the FDCA.

37.    Defendant's label is misleading to consumers because "Slightly Sweet" is a "low sugar" claim even though above this more prominent claim is *part* of a "Relative Claim" – "A Less Sweet Twist On Our Authentic Chai."



38.    When the FDA developed nutrient content claims, it addressed claims of "high," "low" and "relative" amounts of nutrients.

39.    Specifically, "light," "reduced" and "less," were designated as "relative claims" because they  provide a basis for comparing the level of a nutrient in one food to its level in another food. 21 C.F.R. § 101.13(j) (also including "more").

40.    The FDA noted that relative claims are distinct from "'absolute' nutrient content claims using, for example, 'low' or 'high.'"

41.    Relative claims are required to have certain additional information, including "the identity of the reference food and the percentage (or fraction) of the amount of the nutrient in the reference food by which the nutrient in the labeled food differs (e.g., "50 percent less fat than

---

[14] CSPI Letter, fn 19, Merriam-Webster Dictionary. https://www.merriam-webster.com/dictionary/slight. Accessed July 26, 2019.

(reference food)" or "1/3 fewer calories than (reference food)')." 21 C.F.R. § 101.13(j)(2)(i).

42.     This information is required to be presented "immediately adjacent to the most prominent claim," which is "Slightly Sweet." 21 C.F.R. § 101.13(j)(2)(ii).

43.     Relative claims for sugar include "reduced sugar," "reduced in sugar," "sugar reduced," "less sugar," "lower sugar" or "lower in sugar." 21 C.F.R. § 101.60(c)(5).

44.     Defendant's label presents consumers with an "absolute" claim that the Product is "low sugar" – "Slightly Sweet" –  followed by an inadequate attempt at a relative claim – "A Less Sweet Twist…"

45.     Defendant's front label does not indicate "the percent (or fraction) that the sugar differs between the two foods" "in immediate proximity to the most prominent such claim."  21 C.F.R. § 101.60(c)(5)(ii)(A).[15]

46.     Nevertheless, the most prominent claim on the Product is *not* a relative claim like those permitted by the regulations for this type of claim, i.e., "Reduced Sugar" or "Less Sugar."

47.     Instead, Defendant's most prominent claim is an "absolute" "low sugar" claim – "Slightly Sweet."

48.     Using an absolute "low sugar" claim – "Slightly Sweet" along with *part* of a clarifying required statement for a "relative claim" ("Less Sweet") – defeats the purpose of the regulations for nutrient content claims – to provide consumers with accurate, non-conflicting and truthful information about the properties of a food or beverage.

49.     The Product's most prominent claim is not "Reduced Sugar" or "Less Sugar" even though Defendant could easily have used these terms.

50.     The term "Slightly Sweet" however tells consumers that the absolute amount of

---

[15] The example for this type of disclosure is "(e.g., 'these corn flakes contain 25 percent less sugar than our sugar coated corn flakes')."

sugars in the Product will be "low," even though the Product is not low in sugar or added sugars, and depending on the beverage chosen for mixing, may be high in sugar.

51.    No requirement exists to compel the Product to represent or allude to its sugar content on the front label, as opposed to the requirement it be present in the nutrition facts, so it can be viewed in context alongside the total calories and carbohydrates.

52.    When consumers observe the Product's front-label representation as "Slightly Sweet," they reasonably believe the Product is lower in calories, sugar and added sugar than it is.

53.    Far from being "Slightly Sweet" and low in sugar, sugar is the second most predominant ingredient in the Product by weight – "Organic Dried Cane Sugar Syrup."

> INGREDIENTS: WATER, ORGANIC DRIED CANE SUGAR SYRUP, ORGANIC BLACK TEA, *ORGANIC SPICES, *ORGANIC VANILLA, ORGANIC HONEY, CITRIC ACID, NATURAL FLAVORS.

54.    The Product's Nutrition Facts reveals eleven (11) grams of added sugar, which is 22% of the Daily Value.



55.    The serving size is three-quarters (3/4) of a cup, or 180 mL (6 oz).

56.    The Product's instructions state to combine "Equal Parts Oregon Chai Concentrate with Equal Parts Milk or a Dairy Substitute."



57.    Based on the packaging directions, the Product is intended to be consumed with an equal amount of milk or milk-alternative, making the total consumed serving size 12 oz (360 mL).

58.    The Product is classified as a milk-based beverage, because the directions recommend adding milk to make the beverage for consumption, which makes the RACC 240 mL (8 oz).[16]

---

[16] Reference Amounts Customarily Consumed: List of Products for Each Product Category: Guidance for Industry, FDA, February 2018, p. 17, Category, "Milk, milk-substitute beverages, milk-based drinks, e.g., instant breakfast, meal replacement, cocoa, soy beverage."

59.     The addition of any kind of milk or milk alternative will generally add to the total sugars in the final consumable beverage.

60.     For example, an equal amount of milk (180 mL) would contribute an extra 9 grams of sugar.

61.     The combination of the chai concentrate and milk would be 12 oz with 20 grams of sugar.

62.     11 of the 20 grams of sugar are "added sugar," since milk has naturally occurring sugar.

63.     This means that (only considering the chai part of the beverage) the Product contains 7.3 grams of sugar per the RACC of 8 oz.

64.     The combination of the chai concentrate and a milk alternative, like almondmilk would be 12 oz with 20 grams of sugar.

65.     In this scenario, 20 of the 20 grams of sugar are "added sugar," since almondmilk typically has 9 grams of added sugar.

66.     Based on 20 grams of sugar in a serving size of 12 oz, the Product would contain 13.3 grams of sugar per the RACC of 8 oz.

67.     Though the FDA has not issued regulations defining "low sugar" or "low added sugar," they have set criteria for "low xxx" and "high xxx" claims for other nutrients such as fat, saturated fat, cholesterol, and sodium.

68.     "Low" claims are those where the amount of the nutrient is between five (5) and seven (7) percent of the daily value ("DV") per Reference Amount Customarily Consumed ("RACC").

69.     "High" claims are those where the amount of the nutrient is at least twenty (20)

12

percent of the DV per RACC.[17]

70. In the first scenario of added milk to the chai concentrate, if a comparable standard for DV of sugars was set, the Product would contain fifteen (15) percent of the DV for added sugars per RACC.

71. In the second scenario of added almondmilk (or any milk alternative with added sugar) to the chai concentrate, if a comparable standard for DV of sugars was set, the Product would contain twenty-seven (27) percent of the DV for added sugars per RACC.

72. In either scenario, the Product would not qualify as "low" in added sugars, and in the second scenario, would be "high" in added sugars according to FDA's standard definition for "high in" claims.

73. Since the Product – as preparations instructions indicate – contains either 15 percent or 27 percent of the daily value for added sugars, despite its most prominent claim touting it as being "low sugar," it poses "a specific a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes."[18]

74. In purchasing and consuming the Product, consumers are misled to believe they are consuming a beverage which is low in added sugars when the Product is not low in added sugars and may even be high in added sugars.

75. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiffs and consumers.

76. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiffs.

---

[17] 21 C.F.R. § 101.54.
[18] CSPI letter, p.6.

77.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

78.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

79.     As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $4.99 for 32 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

80.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

81.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

82.     Plaintiff Jaclynn Brown is a citizen of New York.

83.     Defendant is a Delaware corporation with a principal place of business in Beloit, Wisconsin and is a citizen of Delaware and Wisconsin.

84.     Minimal diversity exists because plaintiff and defendant are citizens of different states.

85.     Upon information and belief, sales of the Product in New York and throughout the 49 other states exceeds $5 million per year, exclusive of interest and costs and damages exceed this amount.

86.     Venue is proper in this judicial district because a substantial part of the events or

omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

87.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

88.     Plaintiff Jaclynn Brown is a citizen of New York, New York County, New York.

89.     Defendant Kerry Inc. is a Delaware corporation with a principal place of business in Beloit, Wisconsin.

90.     Defendant is one of the largest food companies in the world and wholly owns and controls Oregon Chai.

91.     During the relevant statutes of limitations for all claims alleged, plaintiff purchased the Product within her district and/or State for personal and household use and/or consumption in reliance on the representations of the Product referenced herein.

92.     Plaintiff Jaclynn Brown purchased the Product on one or more occasions during the relevant period, and did so between November 2019 and May 2020, among other possible times, at stores including but not necessarily limited to, Target, 112 West 34th Street New York NY 10120.

93.     Plaintiff bought the Product because she wanted to consume a product that had a low amount of sugar and added sugar, so she relied on the "Slightly Sweet" claim.

94.     Because Plaintiff reasonably understood the Product to be represented as one that was "low sugar," Defendant's partial "relative claim" about the Product having "less sugar" than another, unspecified version of the Product had no significance.

95.     Plaintiff bought the Product at or exceeding the above-referenced prices because she liked the product for its intended use and consumption and expected it would be low in sugar,

because that is how she understood "slightly sweet."

96.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

97.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

98.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

99.    Plaintiff intends to, seek to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

100.   The class will consist of all purchasers of the Product who reside in New York and all other states other than California during the applicable statutes of limitations.

101.   Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

102.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

103.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

104.   Plaintiff is an adequate representatives because her interests do not conflict with other members.

105.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

106.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

107.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

108.  Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

109.  Plaintiff incorporates by reference all preceding paragraphs.

110.  Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

111.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

112. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product by giving consumers the impression they were low in sugar when they were not.

113.  Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

114.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

115.  Plaintiff incorporates by reference all preceding paragraphs.

116. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

117.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

118.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

119.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

120.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

121.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

122.   Plaintiff incorporates by reference all preceding paragraphs.

123.   The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not – low in added sugars and total sugars.

124.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

125.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

126.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

127.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding

the Product, of the type described here.

128.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

129.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

130.  Plaintiff incorporates by reference all preceding paragraphs.

131.  Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

132.  Defendant's fraudulent intent is evinced by its failure to accurately describe the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.

133.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

134.  Plaintiff incorporates by reference all preceding paragraphs.

135.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the

undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 18, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-09730
United States District Court
Southern District of New York

Jaclynn Brown, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Kerry Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 18, 2020

/s/ Spencer Sheehan
Spencer Sheehan